IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT DARNELL BEAL,<br><br>Defendant. | Case No. 18-cr-00070-DKW-12<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS** |

Before the Court are two Motions to Dismiss the Third Superseding Indictment (the "Indictment") as to Defendant Robert Beal. Beal argues Count I of the Indictment should be dismissed as duplicitous and because his Due Process and Speedy Trial rights have been violated. His Due Process claims center on the Government's inability to produce a copy of either the traffic stop recording of Beal's taxi during which drug evidence was recovered or a recording of his post-arrest interview on December 10, 2014. Beal's Speedy Trial claims assert prejudice caused by the roughly two-year period between indictment and his expected June 21, 2021 trial, a delay to which he only partially objected. Because, as more fully explained below, Beal has failed to show prejudice from the absence of the referenced recordings or that either would offer exculpatory evidence that is not already available to him, and because he has not shown that the portion of the

1

trial delay to which objected was somehow unreasonable, both motions (Dkt. Nos. 360, 371) are DENIED.

## LEGAL STANDARDS

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). In considering a pretrial motion to dismiss an indictment, the court "must presume the truth of the allegations in the charging instruments." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir.1996). "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir.1993) (internal citations omitted).

## DISCUSSION

Beal's motions primarily concern: (1) the loss of evidence, specifically, a video of the traffic stop of Beal's taxi and an audio recording of a law enforcement interview, both from December 10, 2014; and (2) delays—both in bringing the indictment and getting Beal's case to trial. As to the former, Beal has failed to demonstrate that the loss of the recordings has meaningfully impaired his ability to defend himself because he fails to articulate what *exculpatory* value, if any, either recording possesses. As to the latter, Beal again fails to meet his burden, primarily because he fails to show how the pre-indictment delay was prejudicial or that any

pretrial delay, particularly the limited portion to which he objected, was unreasonable. For these reasons, both of his Motions to Dismiss are DENIED.

## I. Due Process

Beal takes a two-pronged approach to the violation of his Due Process rights. First, he argues that pre-indictment delay caused evidence to be lost, and that loss has impaired his ability to defend himself. Dkt. No. 360-1 at 3–6. Second, he argues that law enforcement failed to preserve unique evidence with alleged exculpatory value. Dkt. No. 371. Because Beal has failed to demonstrate how loss of the evidence in question causes him *actual prejudice*, that the lost evidence had any value, much less of the exculpatory variety, or that the Government acted in bad faith in failing to retain it, neither argument has merit.

### A. Standard

"In order to succeed on his claim that he was denied due process because of pre-indictment delay, [a defendant] must satisfy both prongs of a two-part test. First, he must prove actual, non-speculative prejudice from the delay. Second, the length of the delay is weighed against the reasons for the delay, and [the defendant] must show that the delay offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (citations and internal quotation marks omitted). A court only need reach the second prong if the defendant is able

to demonstrate "actual prejudice." *Id.* (citation omitted). "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." *Id.* (citations and internal quotation marks omitted).

For a defendant to demonstrate a violation of his Due Process rights based on the Government's failure to preserve evidence, he must necessarily show: (1) "the unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed;" (2) the lost evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means;" and (3) the Government acted in bad faith in failing to preserve the potentially useful evidence. *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015) (citations and internal quotation marks omitted). "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Id.*

   **B.**  **Video of December 10, 2014 Traffic Stop**

Beal cannot show that the video of the December 10, 2014 traffic stop has any exculpatory value because we know almost nothing about that video. *See* Dkt. No. 355 at 39–41 (Officer Simmons testifying as to the video of the traffic stop). The record tells us nothing, for instance, about how many Ohio State Trooper

4

video cameras were operational, when they were employed, or, critically, *where* they were employed.  *See id.*  We do not know whether police vehicle dashcams, front grill cams, body cams, or other types of cams are at issue.  *See id.*  We do not know in which direction any camera was facing or at what point the camera was turned on or off.  *See id.*  We do not know whether any camera was video-only or also captured audio.  *See id.*  It is impossible to know, then, whether the traffic stop recording of which Defendant complains *would even be capable* of revealing the facts Beal speculates it did.

More precisely, Beal confidently asserts that the missing traffic stop video reveals that "the taxi driver violated no traffic laws, and the stop was pretextual." Dkt. No. 371 at 4.  He boldly continues that the video would reveal how Beal was "not allowed to leave after the drug detection dog failed to indicate the presence of narcotics." Dkt. No. 371 at 4.  Finally, Beal urges that the video would shed light on whether and how consent was obtained to search the black backpack in which the drugs were found.  Dkt. No. 360-1 at 5.  Given the absence of the camera information referenced above, how Beal knows any of this is lost on the Court.  As but one example, since we do not know if the recording contained any audio, it is far from clear how any *Miranda* violation would be evident through production of the recording.

5

The value of any recording is highly suspect for another reason: many of the propositions that Beal asserts would be revealed by any recording are simply not relevant. As mentioned, for instance, Beal says the video would show the taxi driver violated no traffic laws and officers therefore had no cause or suspicion to pull it over. Following the evidentiary hearing that the Court held on Beal's suppression motion, however, the Court found that "Officer Simmons had more than enough indicia of criminal activity to stop Beal's taxi, absent any traffic violations." Dkt. No. 350 at 12. Beal also claims that the video would likely show that he was "not allowed to leave after the drug detection dog failed to indicate the presence of narcotics." Dkt. No. 371 at 4. The Court has ruled on this too. The Court found that because Officer Simmons had probable cause to believe the taxi contained narcotics *before* the dog sniff, his continued detention after the dog did not alert did not violate Beal's rights." Dkt. No. 350 at 13-14.

In short, Beal has not shown that the traffic stop video had *any* exculpatory value, and having failed to do that, he cannot show prejudice.[1]

---

[1] As to whether "comparable" evidence to the lost video is available to Beal, *see Zaragoza-Moreira*, 780 F.3d at 977, the Government has offered several dozen photographs taken at the scene of the December 10, 2014 traffic stop. The Court need not reach the question of whether these are, in fact, comparable, because, as the Court has explained, Beal has failed to demonstrate the video's exculpatory value. Similarly, the Court need not determine whether the video was lost as a result of the Government's bad faith for the same reason. On this latter point, however, the Court notes that Beal appears to concede that he has no evidence of bad faith, acknowledging that it may have been lost as a result of negligence or oversight. *See* Dkt. No. 371 at 5–6 (arguing that just the fact of two agencies losing the videos constitutes "bad faith").

### C.    Recording of December 10, 2014 Interview

Beal argues that the December 10, 2014 audio recording of his interview by Ohio State Trooper Penny Beaty is necessary to "show[] the jury what [Beal] was actually asked and how he answered." Dkt. No. 360-1 at 5. But Beal says nothing about why Trooper Beaty's detailed report of that interview—which provides almost a verbatim account—does not accomplish the same purpose, nor does he allege that her report is inaccurate, incomplete, or misleading. *See* Dkt. No. 355 at 122–123 (Officer Beaty explaining she created a close-to-verbatim report of the interview from the recording). Beal, in other words, does not meet the comparability requirement set forth in *Zaragoza-Moreira*. 780 F.3d at 977.

Beal also rehashes an argument that he made during his suppression hearing—that the recording would reveal whether he was read *Miranda* warnings prior to Beaty's questioning. Dkt. No. 360-1 at 5. But Officer Beaty acknowledged that she did not read Beal his *Miranda* rights because Officer Simmons had already done so a short time earlier during the course of Beal's traffic stop. Dkt. No. 355 at 104–105. Accordingly, production of the recording would offer nothing of value, much less exculpatory value, on this uncontroverted point.

7

Because Beal cannot satisfy the above-referenced portions of the Ninth Circuit's *Zaragoza-Moreira* test[2] with regard to the audio recording of his December 2014 interview, no Due Process violation has been shown.

### D.   Corrective Instruction

Beal argues that if the Court fails to find that loss of the evidence detailed above constitutes a Constitutional violation demanding dismissal of the Indictment, the Court should at least give a corrective jury instruction as to that evidence. Dkt. No. 371 at 10. As the Court indicated at oral argument, Beal dedicated a single paragraph to this assertion, which is insufficient to properly present this issue to the Court. Beal's corrective instruction request is therefore denied without prejudice to him reasserting it in a more complete way as part of either his jury instruction submission or via a motion in limine, both of which remain open to him on the current pretrial calendar.

## II.   Speedy Trial

Beal's Speedy Trial claims allege that the Government's pre-indictment delay, and further delay from indictment to trial, violates his Sixth Amendment and Speedy Trial Act rights. Because Beal consented to much of the delay, and virtually all of it was, in any event, reasonable as a result of what Beal

---

[2] And once again, as was the case with the December 2014 traffic stop video, the Court does not reach the question of whether the interview recording was lost as a result of the Government's "bad faith", given Beal's failure to satisfy *Zaragoza-Moreira*'s other elements.

acknowledges was brought on by the complexity of discovery and a succession of counsel changes among co-Defendants, none of which has hampered Beal's ability to present a defense, the Speedy Trial claims have no merit.

### A.   Sixth Amendment

The Sixth Amendment guarantees that criminal defendants "shall enjoy the rights to a speedy and public trial . . . ." U.S. CONST. amend. VI.  To determine whether a defendant's Sixth Amendment Speedy Trial rights have been violated, courts balance four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Here, the Court recognizes Beal raised his Speedy Trial rights directly or indirectly in opposing two trial continuances and moving to have his case severed. *See* Dkt. Nos. 183, 283, 303, 316.  And the Court presumes the roughly 23-month delay from Beal's indictment to his expected trial is prejudicial.  *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) (citations omitted) ("Courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year").

But presumptive prejudice alone does not demonstrate a Sixth Amendment violation.  *See id.* at 655-56.  The Court must consider whether the presumption is rebutted by the reasons for the delay and the *actual* prejudice any delay caused

Beal.  *Id.*  When considering the reasons for delay, the Supreme Court has instructed courts to, among other things, identify the party responsible for the delay.  *Vermont v. Brillon*, 556 U.S. 82, 90 (2009) (citation omitted).

Beal was indicted on July 2, 2019.  Dkt. No. 4.  He was arrested and has been in custody since September 25, 2019.  Dkt. No. 73.  Neither at his initial appearance on October 16, 2019, nor anytime thereafter, did Beal object to a trial date of March 9, 2020, which excludes eight months from his Speedy Trial Act computation.  *See* Dkt. No. 100.  In fact, in February 2020, Beal joined co-defendant Sione Olevao's motion to continue trial from March 9, 2020 to June 15, 2020.  Dkt. Nos. 132, 136, 138.

Beal first objected to a trial continuance on May 18, 2020.  Dkt. No. 183.  But only a few months later, on September 2, 2020, Beal again consented to a further trial continuance.  Dkt. No. 209.  It was not until December 14, 2020 that Beal again objected to a continuance and has done so continuously since.  Dkt. Nos. 282, 283.

Since March 27, 2021, this Court has received from Beal: (1) a motion to suppress evidence and statements; (2) an appeal of the Magistrate Judge's order denying severance of his case for trial; (3) a motion to compel evidence; (4) two motions to dismiss the Indictment; and (5) eight motions in limine.  Dkt. Nos. 307,

10

314, 316, 354, 359, 360, 371, 390.  The Court received testimony from six witnesses at a suppression hearing on April 29, 2021.  Dkt. No. 344.

In short, though Beal was indicted nearly two years ago and has been in custody for roughly 21 months, he has objected to just over 9 months of pretrial delays.  Dkt. No. 183 (objecting to delay from May 18, 2020 to September 2, 2020, when he again consented to a continuance); Dkt. No. 282, 283 (objecting to delay from December 14, 2020 until his currently scheduled trial date of June 21, 2021).  Moreover, as detailed above, he has spent roughly the last three months litigating various issues for trial, most of which could have been raised earlier.  Of the delays to which Beal objected, all were initiated by Beal's co-defendants, not the Government.  *See* Dkt. Nos. 183, 283.  Together, these facts weigh against finding Beal's Sixth Amendment Speedy Trial rights were violated.

The Court further finds that the enumerated delays have not *actually* prejudiced Beal.  "[A]ctual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (citing *Doggett*, 505 U.S. at 654).  Beal claims to have all three: (1) the length and conditions of his pretrial incarceration have been oppressive; (2) he is anxious and concerned about his case; and (3) the loss of the

11

recordings of his December 2014 traffic stop and December 2014 interrogation impairs his ability to present a defense. Dkt. No. 360-1 at 14.

Though the Court acknowledges the length of Beal's pretrial detention, as mentioned, much of that occurred with his assent, and the Court, in April, severed his case for trial, in part, to address this concern. *See* Dkt. No. 350 at 22–25. In so doing, the Court acknowledged that the Circuit has recently cautioned that a 21-month pretrial detention in a single defendant case was a "troubling length." *United States v. Torres*, 995 F.3d 695, 710 (9th Cir. 2021). This, of course, is anything but a single defendant case. Multi-defendant cases are almost always plagued by delays caused by other parties and that has precisely been the case here.

The Court also acknowledges that, in nearly all criminal cases, a defendant is likely to experience anxiety during the pendency of the case. Beal's generic description of feeling anxious, particularly in light of the reasonableness of his pretrial delays (discussed further below), does not rise to the level of actual prejudice sufficient to find a Sixth Amendment violation. Finally, as explained above, the Court finds that Beal has failed to demonstrate how loss of the recording evidence at issue actually prejudices or impairs the presentation of his defense because he has failed to show how that evidence has any exculpatory value.

### B.   Speedy Trial Act

Beal argues that the seventy-day limit under 18 U.S.C. § 3161 ("the Speedy Trial Act") has expired because (1) he objected to the continuance of trial on two occasions, and (2) though those delays might nonetheless have been reasonable, they should not be attributed to him. Dkt. No. 360-1 at 15-18. The Government disagrees, arguing that the continuances were reasonable under 18 U.S.C. § 3161(h)(6) given the number of defendants, the nature and severity of the charges, the extent of discovery, the complexity of the case, and the fact that new attorneys for co-defendants had joined the case, needing time to prepare, in each instance of a continuance. Dkt. No. 373 at 5-7. The Court agrees with the Government.

The Speedy Trial Act requires that a defendant's trial commence within seventy days of the filing date of an indictment or the defendant's initial appearance, whichever is later. *See* 18 U.S.C § 3161(c)(1). Certain delays are excluded from computing the seventy-day limit. *See* 18 U.S.C. § 3161(h). For instance, a court may exclude "any period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7). In making an "ends of justice" determination, the Court considers, among other things:

13

    (i)    Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

    (ii)    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . . .

    (iv)    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C § 3161(h)(7)(B).

"It is well established that an exclusion from the Speedy Trial clock for one defendant applies to all codefendants. . . . The attribution of delay to a codefendant, however, is limited by a reasonableness requirement." *United States vs. Messer*, 197 F.3d 330, 336 (9th Cir. 1999) (citation omitted). The proper test to evaluate the requirement "is whether the totality of the circumstances warrants a conclusion that the delay was unreasonable." *Id.* at 338.

As discussed above, Beal has objected to just over 9 months of trial delays. Given the Magistrate Judge's explanation for granting the two continuances over Beal's objections, the Court finds the trial delays were reasonable under the circumstances. On May 27, 2020, the Magistrate Judge granted, over Beal's

14

objection, Defendant Tasmania Milo's motion to continue trial from June 15, 2020 to October 19, 2020 and excluded the time under the Speedy Trial Act.  Dkt. No. 186.  The Magistrate Judge noted that co-Defendant Milo's counsel had just joined the case and a failure to grant the requested continuance "likely would result in a miscarriage of justice and would deny [Milo's counsel] reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  *Id.* at 3-4.  The Magistrate Judge cited the number of defendants, the number, nature, and severity of the offenses charged, the nature and extent of discovery recently produced by the Government, and the time needed to investigate and prepare the case for trial as contributing reasons for granting the continuance.  *Id.*

On December 28, 2020, the Magistrate Judge granted, again over Beal's objection, Defendant Vaitaki Manoa, Jr.'s motion to continue trial from January 11, 2021 to June 21, 2021.  Dkt. No. 285.  The Magistrate Judge noted that co-defendant Manoa's counsel had just joined the case and cited virtually the same set of reasons justifying its May 27, 2020 decision to continue trial.  *Id.* at 3-4.  In short, the Court agrees with Beal's frank concession that, "[i]t is understandable in the age of COVID and in such a case with a large amount of discovery that continuances for new attorneys might be needed." [3]  Dkt. No. 360-1 at 17.

---

[3]Beal argues that despite these delays being "understandable," they should not apply to him because, had his initial severance motion been granted, "his trial could have commenced and been resolved over a year ago."  Dkt. No.  *See* 360-1 at 17–18.  This argument is unpersuasive.

15

Accordingly, the Court finds no Speedy Trial Act violation.  Given the totality of the circumstances, the nine plus months of trial delays to which Beal objected were reasonable.

## III. Duplicity

Beal argues that, because Count I of the Indictment—the only count against him—is duplicitous,[4] the Court should either dismiss it or, in the alternative, rule as a matter of law that Beal can only be convicted on the lesser charge of violating 21 U.S.C. § 841(b)(1)(B).  Dkt. No. 360-1 at 1–3.  The Government does not contest that Count I is duplicitous.  Dkt. No. 373 at 2–3.  Rather, it argues that the remedy Beal seeks is inappropriate and that duplicity may be cured by a unanimity instruction and special verdict form.  *Id.*  The Court agrees with the Government.

The Ninth Circuit has established that "a defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of

---

First, Beal contributed to his pretrial delay by waiting ten months to appeal the Magistrate Judge's order denying his motion to sever.  Dkt. Nos. 186, 303, 316.  Moreover, Beal's initial motion to sever was denied in May 2020.  Dkt. No. 186.  This Court overruled that decision only after Beal had spent almost another year in pretrial detention, making clear that the length of that detention was a material factor in granting severance.  Dkt. No. 350 at 22–25.  In other words, the Court does not necessarily agree that Beal's severance motion would have been granted in May 2020, had he brought it before this Court at that time, such that later trial delays should not be attributed to him.

[4]"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir.1976), *cert. denied,* 430 U.S. 966 (1977).

the distinct charges the defendant actually committed." *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007). Because the Government has represented it will ask for an unanimity instruction and "propose that a special verdict form be used requiring the jury to unanimously find by evidence beyond a reasonable doubt the controlled substance that the Defendant conspired to distribute and possess with intent to distribute," together with the quantity of that controlled substance, Dkt. No. 373 at 2–3, Count I of the Indictment need not be dismissed.[5]

## CONCLUSION

For the reasons set forth herein, Beal's motions to dismiss, Dkt. Nos. 360, 371, are DENIED.

IT IS SO ORDERED.

Dated: June 7, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*United States v. Beal*, Criminal No. 18-00070-DKW-12; **ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS**

---

[5] If the Government fails to propose a proper set of curative jury instructions and verdict form, the Court may do so sua sponte.

17