IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| UNITED STATES OF AMERICA, | Case No. 18-cr-00070-DKW-KJM-12 |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S NINTH MOTION IN LIMINE** |
| vs. | |
| ROBERT DARNELL BEAL, | |
| Defendant. | |

On June 8, 2021, Defendant Robert Beal filed his Ninth Motion in Limine (the "motion"), which seeks a remedial jury instruction concerning the loss or destruction of two recordings—a police vehicle camera video from the December 10, 2014 traffic stop of Beal's taxi and an audio recording of his post-arrest interview from that same day. Dkt. No. 402. Because the prejudice to Beal from the loss of these recordings is, at best, minimal, the motion is DENIED.

On December 10, 2014, federal and state law enforcement officials surveilled Beal from his arrival at the Dayton, Ohio airport up and until Ohio State Trooper Rachel Simmons executed a traffic stop of a taxi in which Beal was traveling. Dkt. No. 350 at 2–4. A search of the rear passenger area of the taxi revealed a black backpack in which two packages of illegal narcotics were discovered. *Id.* at 5. Thereafter, Beal was placed under arrest and transported to

1

the Dayton Patrol Post for questioning and processing. *Id.* at 5–6. At the Post, Ohio State Trooper Penny Beaty interviewed Beal. *Id.*

At a suppression hearing, Trooper Simmons revealed that a "vehicle cam" video of the traffic stop once existed but has since been lost. Dkt. No. 355 at 39–40. At the same hearing, Trooper Beaty revealed that a digital audio recording of the interview once existed but has since been lost. *See* Dkt. No. 355 at 103–04. Trooper Beaty testified that she believed she had sent a copy of the interview recording to a federal DEA agent. *Id.* at 104. Trooper Simmons was unsure what she had become of the vehicle cam recording, stating that she believed a copy was given to the DEA "at some point" but that she could not "say for certain." *Id.* at 39.

The present motion asks the Court to deliver the following remedial jury instruction concerning the lost or destroyed recordings:

> If you find that the Government lost or destroyed evidence which was potentially relevant in the trial of this case, and that the Government knew or should have known of the potential relevance of such evidence to this litigation, then you may infer that the evidence rendered unavailable by the Government's destruction thereof to have been unfavorable to the Government in its case against Defendant.

Dkt. No. 401-1 at 6; Dkt. No. 402 at 2.

To determine whether a remedial instruction due to loss of evidence is appropriate, the Court must balance "the quality of the Government's conduct against the degree of prejudice to the accused, where the government bears the

2

burden of justifying its conduct and the accused of demonstrating prejudice." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (citing *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)). A showing of bad faith is not required. *Id.* Rather, the Court's "principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to insure a fair trial." *Id.* (citing *Loud Hawk*, 628 F.2d at 1151).

In evaluating the quality of the government's conduct, the Court must consider:

> whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification.

*Id.* (citing *Loud Hawk*, 628 F.2d at 1152). Also relevant is "whether the government attorneys prosecuting the case have participated in the events leading to the loss or destruction of the evidence." *Id.* (citing *Loud Hawk*, 628 F.2d at 1152).

With regard to prejudice, the Court must consider:

> the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to

3

the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*Id.* at 1173–74 (citing *Loud Hawk*, 628 F.2d at 1152).

Here, there is no dispute that the recordings at issue were lost or destroyed while in the custody of the Ohio State Police and, possibly, the federal government. *See* Dkt. No. 355 at 103–04, 139–40. According to Troopers Simmons and Beaty, the recordings were destroyed due to the agency's document retention policy/system. *See* Dkt. No. 355 at 39 (Trooper Simmons explaining that she searched for the video prior to the suppression hearing but that "[o]ur system retention doesn't hold the video this long"); *id.* at 104 (Trooper Beaty explaining virtually the same thing). Though it is unclear whether the federal government ever had the recordings, if it had, the Government has not been able to locate them despite efforts to do so. *See, e.g.*, Dkt. No. 355 at 111.

The Court finds that the Government's conduct amounts, at most, to negligence.[1] Further, there is no evidence that federal prosecutors or law enforcement agents had any hand in making the evidence unavailable.[2]

Despite the Government's possible negligence in failing to retain the recordings, the minimal evident value of the recordings to Beal weighs strongly in favor of not giving the remedial instruction he seeks. As the Court has previously explained, other than the fact that Beal claims he was not read his *Miranda* rights upon arrest—a fact contested by Trooper Simmons' sworn testimony, Dkt. No. 355 at 41, 84–86—there is virtually no other fact in dispute that is beneficial to him that he claims the recordings might reveal. *See* Dkt. No. 399 at 6–8. And with respect to that fact, we have no idea whether the traffic stop video that Trooper Simmons identified would shed any light because we do not know in which direction the camera was pointed, we do not know when it was turned on or off, we do not know on which of the multiple law enforcement vehicles on scene the camera was located, we do not know the proximity of that vehicle to the taxi, and

---

[1]Because Troopers Beaty and Simmons report the recordings were lost or destroyed consistent with the Department's standard retention policy, and because the record is void of any information that explains the circumstances behind the absence of the same recordings in federal hands, the Court cannot say that the recordings were lost or destroyed in violation of "established and reasonable standards of care for police and prosecutorial functions." *See Sivilla*, 714 F.3d at 1173 (citing *Loud Hawk*, 628 F.2d at 1152).

[2]Based on the current record, the only federal official who *may* have had a copy of the interview recording, DEA Agent Jorge Del Rio, was killed executing a search warrant. Dkt. No. 355 at 104. The Court has no information indicating that the DEA lost this recording due to a breach of a "reasonable standard of care."

5

we do not know whether the recording contained any audio. In short, we have no clue what the missing recording could have even *potentially* captured. *See* Dkt. No. 399 at 4–5. Moreover, even if the traffic stop video revealed every other fact Beal claims it might—*i.e.*, that the taxi did not commit a traffic violation and the stop was pretextual, that the law enforcement canine failed to alert when conducting a sniff around the taxi, that he was detained after the negative drug sniff, and Beal's possession of the black backpack and failure to consent to a search of it—those facts are either uncontested, irrelevant, or not "central[] . . . evidence to the case" nor "importan[t] in establishing the elements of the crime or the motive or intent of [Beal]." *See* Dkt. No. 399 at 5–6; *see also* Dkt. No. 402.

As to the interview recording, Beal has not articulated a single probative fact that the recording *might* reveal that Trooper Beaty's contemporaneous December 2014 report of that interview does not.[3] *See* Dkt. No. 360-1 at 5 (Beal arguing the recording would "show[] the jury what [Beal] was actually asked and how he answered"); Dkt. No. 402 at 5 (Beal arguing the recording "would show actually what he said that night"). In other words, Beal has not even alleged that Beaty's accessible report is somehow misleading, inaccurate or incomplete, nor has he explained why it would not serve as a comparable substitute to the absent

---

[3]Trooper Beaty's report of her interview with Beal has never been officially entered into the record. However, a copy of the report was presented to the Court for its potential use in an April 29, 2021 suppression hearing. The Court has attached the Beaty report to this order under seal.

6

recording.[4]  Nor has Beal even speculated as to what that audio recording might reveal *that would help his defense at all*, let alone demonstrate "the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant."

One reason Beal has not articulated how the recording would help him is likely that Trooper Beaty's report of her interview with Beal does not contain any particularly inculpatory evidence.  Trooper Beaty records that Beal repeatedly denies ownership of the black backpack and expresses surprise at learning the backpack contained narcotics.  *See* Ex. 1 at 3, 5.  Beaty, in other words, does not contradict the position that Beal has maintained to this day, meaning the recording is not likely to shed any light on a fact in dispute.  Under these circumstances, the Court finds that "the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused" is extremely low.

---

[4] Trooper Beaty is also expected to be available at trial for cross-examination, just as she was in late April 2021 during Beal's suppression hearing.

## CONCLUSION

In balancing the Government's conduct against the prejudice to Beal, the Court finds that because the Government's conduct associated with the missing recordings rises to, at most, negligence, and the prejudice to Beal is virtually nonexistent, Beal is not entitled to the remedial instruction he seeks. Beal's Ninth Motion in Limine, Dkt. No. 402, is DENIED.

IT IS SO ORDERED.

Dated: June 18, 2021 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

*United States v. Beal,* Crim. No. 18-00070-DKW-KJM-12; **ORDER DENYING DEFENDANT'S NINTH MOTION IN LIMINE.**