IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT DARNELL BEAL,<br><br>Defendant. | Case No. 18-cr-00070-DKW-KJM-12<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO (1) SET ASIDE THE GUILTY VERDICT AND ENTER AN ACQUITTAL, (2) ORDER A NEW TRIAL, AND/OR (3) ARREST JUDGMENT** |

On June 25, 2021, after a five-day trial, a jury convicted Defendant Robert Darnell Beal of conspiracy to distribute 400 grams or more of Fentanyl. Dkt. No. 466. On October 1, 2021, Beal moved this Court to set aside that guilty verdict and enter an acquittal, to order a new trial, and/or to arrest judgment pursuant to Fed. R. Crim. P. 29, 33, and 34, respectively. Dkt. No. 518.[1] To support these motions, Beal proffers five arguments: (1) the evidence was insufficient to sustain the conviction because of a break in the chain-of-custody documentation relating to the fentanyl, *id.* at 4–8; (2) the Court was required to give a specific unanimity jury instruction, but did not, *id.* at 12–13; (3) trial counsel was constitutionally ineffective by failing to introduce evidence of a field drug test result that was inconsistent with a subsequent laboratory analysis; *id.* at 10–11; (4) the

[1]Beal's post-trial motion deadline was extended to October 1 at his request. Dkt. Nos. 488–89.

1

Government's fentanyl charge violated the statute of limitations, and the Court erred in holding otherwise, *id.* at 14–15; and (5) proper venue for this action does not lie in the District of Hawai'i.  *Id.* at 15–19.

For the reasons set forth below, the Court DENIES all three motions. Sentencing will proceed, as scheduled, on January 27, 2022.  *See* Dkt. No. 487.

## **RELEVANT BACKGROUND**

In late 2014, co-Defendant Pongitini Latu Fonua was the target of a drug investigation led by the Maui office of the Federal Bureau of Investigation ("FBI"). Fonua's San Francisco Bay Area-based operation regularly obtained controlled substances and distributed them in several locations, including Hawai'i.  *See* 6/22/21 Trial Tr., Dkt. No. 498 at 100:14–16.

Through wiretaps, the FBI learned of Fonua's plan to expand into new territory—Ohio and possibly New York.  6/23/21 Trial Tr., Dkt. No. 499 at 43:2– 44:13.  Over monitored phone calls, Fonua and a man called "Chelz"[2] arranged a rendezvous between their respective couriers—Vaitaki Manoa, Jr. and a man known as "Oso."  *Id.*  Manoa would transport drugs from California on Fonua's behalf to the Dayton, Ohio Airport on December 10, 2014 and pass them to "Oso" for further transport.[3]  *Id.*

---

[2]"Chelz" has never been identified by law enforcement.  6/23/21 Trial Tr. at 31:18–23.
[3]The monitored calls did not specify the type of drugs to be transported, but the FBI expected it to be cocaine or methamphetamine based on the drugs in which Fonua's organization usually trafficked.  *See* 6/24/21 Trial Tr., Dkt. No. 500 at 61:23–25.

Upon learning of the Dayton plan, the Maui FBI, Ohio FBI, Ohio DEA, and Ohio State Police established a joint surveillance operation in and around the Dayton Airport on December 10.  The operation successfully tracked Manoa as he arrived in Dayton, departed for a nearby motel, and transferred a black backpack to a person they later identified as Defendant Beal.[4]

After the transfer, which occurred within hours of his arrival in Dayton, Beal entered a cab that was lawfully stopped by Ohio State Trooper Rachel Simmons, a member of the surveillance team.  6/23/21 Trial Tr. at 156:25.  Simmons noted Beal "appeared very nervous"—he was shaking and licking his lips.  *Id.* at 165:7–20.  When asked to identify his bags, Beal, the cab's only passenger, denied ownership of the black backpack located beside him in the rear passenger area.  *Id.* at 167:20–23.  Simmons searched the backpack and found two vacuum-sealed plastic bags of white powder.  *Id.* at 172:14–25.[5]  On-scene, law enforcement administered an "NIK" field test on the powder, which tested presumptively positive for cocaine.  Dkt. No. 413-1 at 4:5.  Beal was then arrested, interviewed, and released, with the investigation into Fonua's organization continuing for several years.

---

[4]Beal had flown to Dayton from his home in Arizona, arriving at roughly the same time as Manoa.

[5]The propriety of law enforcement's search of the backpack was the subject of an evidentiary hearing following Beal's filing of a motion to suppress.  *See* Dkt. No. 307.  The Court denied that motion by order dated May 5, 2021.  Dkt. No. 350.

After Simmons seized the backpack and powder on December 10, 2014, the evidence traveled through a somewhat arduous—and, unless otherwise stated, meticulously documented—chain-of-custody process spanning about five-and-a-half years.  Of relevance, on December 11, 2014, FBI Special Agent Dennis Eng sealed the drugs and labeled them with a Honolulu-based file code, 245C-HN-5788811.  *See* 6/23/21 Trial Tr. at 85:23–25; 6/24/21 Trial Tr., Dkt. No. 500 at 148:3–4.  On December 23, a Dayton FBI evidence technician shipped the sealed package via FedEx to the Quantico, Virginia FBI lab.  6/24/21 Trial Tr. at 128:10–17.  There is no record of the drugs' having arrived in or departed from Quantico.  *Id.* at 137:6–22.  Eight days later, on December 31, Honolulu FBI evidence technician Pauline Cummings received the package from the Quantico lab—still sealed and labeled with the Honolulu file code.  6/22/21 Trial Tr. at 13:9–21, 15:3–9, 16:18–20, 18:19–22.  About four years later, on March 25, 2019, pursuant to progress in the FBI's investigation and imminent federal arrests, Cummings shipped the package via FedEx to a DEA laboratory in Vista, California for formal testing.  *Id.* at 20:7–8, 22:2.  Finally, a year later, on March 23, 2020, a DEA forensic chemist tested the white powder and determined it was fentanyl.[6]  6/24/21 Trial Tr. at 152:7–13, 154:8; Dkt. No. 413-4 at 2–3.

---

[6]The one-year delay in testing was due to a large backlog of cases at the lab.  6/24/21 Trial Tr. at 152:8–16.

On July 2, 2019, before the drugs had been officially analyzed, the Government charged Beal and others, including Fonua and Manoa, with conspiracy to distribute methamphetamine and cocaine.  Superseding Indictment, Dkt. No. 4 at 2–3.  On September 25, 2019, pursuant to this charge, the Maui FBI arrested Beal, still living in Arizona.  6/24/21 Trial Tr. at 176:25–177:4.[7]  Then, on November 18, 2020, after the substance reported positive for fentanyl, the Government amended the conspiracy distribution charge in a Third Superseding Indictment to include fentanyl.  Dkt. No. 234 at 2–3.

During Beal's June 2021 trial, the prosecution presented the backpack and powder as evidence.  Trooper Simmons, who originally confiscated the drugs, testified that the evidence appeared the same as when confiscated:

> A: I recognize this to be the white powder.  The vacuum sealed bags—the white powder is no longer in the vacuum sealed bags.  And the brown paper bag, and on the other side of this is the plastic bag from the black backpack.
>
> Q: Does it appear to be in the same condition other than changed in the containers from when you saw it on December 10, 2014?
>
> A: Yes.

6/24/21 Trial Tr. at 44:4–11.

---

[7]On October 9, 2019, a Second Superseding Indictment was filed which did not alter the conspiracy charge against Beal.  *See* Dkt. No. 75 at 2–3.

Twice at trial, defense counsel timely moved for judgment of acquittal via Rule 29, both times for insufficiency of the evidence and lack of venue.  6/25/21 Trial Tr., Dkt. No. 501 at 22:12–14, 42:15–23.  The Court denied both motions on the merits.  *Id.* at 27:24, 42:24–43:1.  The jury unanimously found Beal guilty of conspiracy to distribute fentanyl.  Dkt. No. 466.

On July 2, 2021, Beal's trial counsel, Lars Isaacson, withdrew as counsel, and current counsel, Marc Victor, was appointed the same day.  Dkt. No. 476.

On October 1, 2021, Beal filed this Motion.  On November 1, 2021, the United States submitted its Opposition, Dkt. No. 531, and on November 3, 2021, Beal replied.  Dkt. No. 533.  The Court heard oral argument on November 23, 2021.  Dkt. No. 534.  This Order follows.

## DISCUSSION

I.   **The Rule 29 Motion is DENIED because there was sufficient evidence to permit a rational juror to conclude beyond a reasonable doubt that Beal conspired to distribute fentanyl, despite his perceived break in the chain-of-custody.**

A.   **Legal Standard**

Under Fed. R. Crim. P. 29(a)–(c), a district court must vacate a jury conviction and enter judgment of acquittal if "the evidence is insufficient to sustain a conviction."  But "great deference" is owed to the jury verdict when reviewing for sufficiency.  *United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012).  The evidence is sufficient if, "after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[8]  Thus, a reviewing court must first presume that the jury resolved any conflicting inferences in favor of the prosecution, and then override the verdict only if *all* rational jurors would necessarily find the evidence insufficient.  *United States v. Nevils*, 598 F.3d 1158, 1164–65 (9th Cir. 2010).  Mere "susceptib[ility of the evidence] to an innocent explanation" is not enough.  *Id.* at 1161.

Conviction cannot be based only on unsupported speculation.  *Id.* at 1167; *Juan H. v. Allen*, 408 F.3d 1262, 1278–79 (9th Cir. 2005) ("Speculation and conjecture cannot take the place of reasonable inferences and evidence—whether direct or circumstantial.").  However, jurors "are permitted to draw reasonable inferences from the testimony and exhibits as [they] feel are justified in the light of common experience."  6/25/21 Trial Tr. at 46:8–18.

Here, Beal's conviction of conspiracy to distribute fentanyl under 21 U.S.C. § 846 required the Government to prove two elements: (1) "[T]here was an agreement between two or more persons to distribute and to possess with the intent to distribute [fentanyl]," and (2) "[T]he defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose."  *United States v.*

---

[8]This requirement is rooted in the Fifth Amendment's Due Process Clause.  *See In re Winship*, 397 U.S. 358 (1970).

*Collazo*, 984 F.3d 1308, 1317 (9th Cir. 2021); 6/25/21 Trial Tr. at 52:18–25.  As Beal's jury was instructed, it was not necessary for the conspirators to make a formal agreement, or for Beal to "have full knowledge of all the details of the conspiracy," including the type of drug involved.  6/25/21 Trial Tr. at 53:22–24, 54:7–11, 72:22–73:2.

## B.    Discussion

Beal asserts that the evidence was insufficient to prove the first element, existence of an agreement to distribute fentanyl.  His argument is a narrow one.  He argues only that no rational juror could have found beyond a reasonable doubt that the powder in his possession on December 10, 2014 was the same powder that tested positive for fentanyl on March 23, 2020, given that the FBI expected the conspiracy's object to be cocaine or methamphetamine—not fentanyl—and given what he perceives to be an eight-day lapse in custodial documentation at Quantico from December 23 to 31, 2014.[9]  Dkt. No. 518 at 7 ("It was not a reasonable interference [sic] that the cocaine and methamphetamine conspiracy shipped

---

[9]Beal also argues that the December 10 NIK field test, which preliminarily indicated cocaine, contributes to insufficiency.  Dkt. No. 518 at 8.  But since this evidence was never introduced to the jury, it is not appropriate to consider it in a Rule 29 sufficiency analysis.  *See Jackson*, 443 U.S. at 324 (holding that the sufficiency inquiry depends on "the record evidence adduced at trial"); *see also Nevils*, 598 F.3d at 1164 ("A reviewing court must consider the evidence *presented at trial* in the light most favorable to the prosecution.") (emphasis added); *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021) (considering only evidence introduced at trial).  Beal chose to exclude the NIK test evidence at trial and cannot renege on that strategy now as part of his insufficiency claims.  *See also infra*, Section II.b.b (addressing Beal's claim of ineffective assistance of counsel for trial counsel's decision to exclude the NIK field test evidence).

Fentanyl to Dayton in light of the mix up in December of 2014 when the white powdery substance was unaccounted for."). He argues that only impermissible speculation could allow this conclusion, *id.*, whereas the reasonable inference was that "a mistake had been made and the white powdery substance seized on December 10, 2014 had been misplaced and a different substance was received by the FBI in Honolulu on December 31, 2014" and subsequently sent for laboratory testing. *Id.* at 3.

Beal's Rule 29 motion at trial argued similarly that the evidence was insufficient because FBI intelligence had not uncovered an explicit plan to deal in fentanyl—"all of the prior calls . . . had to do with either cocaine or ice."[10] 6/25/21 Trial Tr. at 22:12–12, 25:14–17. The Rule 29 motion at trial did not specifically invoke chain-of-custody, but that argument was preserved by trial counsel's repeated objections to the drug's authenticity on that basis. *See id.* at 19:14–21:7; 6/24/21 Trial Tr. at 154:2–3, 156:12–13, 169:5–11.

Now, reconsidering Rule 29 in light of Beal's additional chain-of-custody argument, the Court still finds the evidence sufficient for conviction. A lapse in custodial documentation, even assuming one occurred here, does not *per se* render evidence worthless. For example, in *United States v. Solorio*, the Ninth Circuit

---

[10]At trial, the Court denied the Rule 29 motion because it was reasonable to infer that the cocaine and methamphetamine conspiracy had "branche[d] out into a new controlled substance." *See* 6/25/21 Trial Tr. at 25:13–26:25. That determination is no less reasonable today and has not been controverted by Beal.

held the drug evidence was sufficient to sustain a conviction for distribution of a controlled substance, despite a possible "gap in the chain of custody for the bag carrying the drugs."  669 F.3d 943, 954–56 (9th Cir. 2012).  There, the bag of drugs had been opened and resealed twice without documentation or explanation. *Id.* at 948.  Further, the witness who originally sealed the drugs testified that the drugs presented at trial had been altered—they had begun as disks and were now broken apart, and their weight had decreased substantially.  *Id.*  Although the *Solorio* court acknowledged that these facts *could* support an inference that "the contents of the evidence bag . . . [may] ha[ve] been materially altered," the opposite inference was also reasonable in light of all the evidence.  *Id.* at 954–55.

Even more so here than in *Solorio*, a rational juror could conclude that the powder that departed the Dayton FBI on December 23 addressed for the Quantico FBI was the same as the powder that arrived at the Honolulu FBI on December 31.[11]  Here, unlike in *Solorio*, the white powder bags were never opened prior to testing after Special Agent Eng sealed them with the unique code, 245C-HN-5788811.  *See* 669 F.3d at 948.  In other words, the package shipped by the Dayton FBI to Quantico on December 23 arrived in Honolulu from Quantico on December

---

[11]This is the only time period at issue.  During oral argument, Dkt. No. 534, Beal made much of the five-plus-year delay from receipt in Honolulu on December 31, 2014 until formal analysis at the DEA laboratory on March 23, 2020, but he has not explained how the delay impeaches the sufficiency or authenticity of the drug evidence.  The storage, transfer, and testing of the drugs were meticulously documented and explained during this time period.

31—still sealed and labeled in the manner first accomplished by SA Eng.  6/24/21 Trial Tr. at 125:17–22; 6/22/21 Trial Tr. at 13:9–21.  Beal's only complaint is the absence of documentation at Quantico sometime between December 23 and 31, 2014.  *See* 6/24/21 Trial Tr. at 137:6–22.  That absence was explained at trial.  An FBI evidence analyst testified that, if a package labeled 245C-HN-5788811 had arrived in Quantico in 2014, Quantico would not have documented receipt or conducted analysis, but would instead have securely stored it and promptly shipped it to the "owning office" based on the file code—Honolulu.  She testified --

> We would not initiate a chain of custody or enter it into our system, but we would store it in what we consider appropriate storage for that suspected type of evidence, [which would be a] drug vault for anything that might be suspected drugs.  And then we would reach out to the contributing agencies or whoever may have submitted it to us, or the party that we thought it may have been intended for, to have the disposition done appropriately.

*Id.* at 138:20–139:22, 141:9–23.  She also testified that an FBI quality assurance program ensured these protocols were followed.  *Id.* at 144:13–18.

Further, unlike in *Solorio*, the appearance of the drugs here never significantly changed.  *See* 669 F.3d at 948.  At trial, Trooper Simmons, the officer who initially confiscated the backpack containing the suspected drugs from Beal, testified that the backpack and powder appeared to be unaltered, aside from packaging differences that had been accounted for in the chain-of-custody documentation.  6/24/21 Trial Tr. at 44:4–11.

11

Although to the FBI's knowledge at the time, Fonua's drug conspiracy usually trafficked in methamphetamine or cocaine, it is not unreasonable for the organization to explore the distribution of a new drug.  Indeed, the Ohio territory itself was also new.  The FBI was not privy to all plans, especially since they did not know the identity of "Chelz."

Finally, aside from the physical evidence, Beal was hardly the paragon of innocence.  When he was pulled over, he appeared nervous and fidgety.  6/23/21 Trial Tr. at 165:7–20.  He denied ownership over the backpack, even though he had just received it from Manoa, even though it was sitting next to him in the rear of the cab that only he occupied as a passenger, even though the cab driver testified that he had just driven Beal to pick up the very backpack that he denied was his, and even though this series of events was surveilled by numerous law enforcement officers who also testified at trial.  *Id.* at 167:20–23.  Beal also made incriminating statements after his 2019 arrest several years later, telling an FBI Special Agent, "I did something that I shouldn't have done.  I didn't even know what I was picking up,"  Dkt. No. 390-1 at 28; 6/24/21 Trial Tr. at 187:11–12, and later asking, "Can I just go in, tell them I messed up, and start doing my time right away?  Without waiting for trial?"  Dkt. No. 307-1 at 6; 6/24/21 Trial Tr. at 189:8–11.

Although a reasonable juror *might* have doubted the authenticity of the drug evidence, given Beal's perceived concerns with the Quantico documentation and

12

given that it ended up being a drug that the FBI did not initially anticipate, the opposite inference was also more than reasonable in light of all the record evidence. *Solorio*, 669 F.3d at 954–55. On that basis, Beal's Rule 29 Motion is DENIED.[12]

---

[12]At the November 23, 2021 hearing, Beal argued that not only was the drug evidence *insufficient*, but it also should not have been *admitted*. Dkt. No. 534. Beal's October 1, 2021 Motion, for which he received a substantial extension, Dkt. No. 489, failed to make such an admissibility argument. Thus, it is untimely. LR 7.2, 7.8. Nevertheless, since this argument was a centerpiece of counsel's oral argument, the Court will address it here.

Over Beal's numerous objections to authenticity at trial, the Court admitted the drug evidence, ruling that the chain-of-custody controversy went "to the weight, not the admissibility" of the evidence. 6/25/21 Trial Tr. at 21:2–3. That ruling is no less true today.

Evidence whose authenticity is challenged at trial is admissible if there is corroborating evidence "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) ("[T]he proponent must also establish the chain of custody."). To establish the chain-of-custody, "[t]he prosecution must introduce sufficient proof so that a reasonable juror could find that the items [the prosecution seeks to admit into evidence] are in 'substantially the same condition' as when they were seized." *Solorio*, 669 F.3d at 954 n.13 (quoting *Harrington*, 923 F.2d at 1374).

In *Harrington*, the Ninth Circuit held drug evidence was admissible despite a chain-of-custody dispute because, *inter alia*, there was no evidence of tampering. 923 F.2d at 1374. "Merely raising the possibility of tampering is not sufficient to render evidence inadmissible," and "[t]he possibility of a break in the chain of custody goes only to the weight of the evidence." *Id.*

At oral argument, Beal argued that the NIK test that was presumptively positive for cocaine was affirmative evidence of tampering because it was inconsistent with the later lab test finding fentanyl. Considering that the NIK evidence was not introduced at trial, was not litigated, and has not been shown by Beal to be determinative or reliable up to any particular threshold, *see infra*, Section II.B.b (addressing the lack of record evidence of the reliability of the NIK test), this does not come close to proving tampering. On the contrary, the drug evidence that shipped from Dayton to Quantico via FedEx on December 23, 2014 was sealed and labeled with a unique Honolulu-based file code. It was then received in Honolulu from Quantico via FedEx on December 31, still sealed and labeled. Every other transfer was meticulously documented. And the original confiscating officer testified that the evidence appeared to be the same. Thus, as in *Harrington*, the prosecution introduced sufficient proof from which to conclude that the drugs seized from Beal on December 10, 2014 were in "substantially the same condition" as when they were admitted into evidence at trial in June 2021. *See Solorio*, 669 F.3d at 954 n.13.

## II.    The Rule 33 Motion is DENIED because a new trial is not in the interest of justice.

### A.    Legal Standard

Under Fed. R. Crim. P. 33(a), a district court may "vacate any judgment and grant a new trial if the interest of justice so requires."  Whether the interest of justice requires a new trial is a matter of discretion for the Court.  *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).  Rule 33 should be used only in "exceptional cases," *id.*, those in which the Court finds that, despite constitutional sufficiency, the evidence nevertheless "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred."  *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992).

### B.    Discussion

Beal proffers two independent reasons why justice requires a new trial: (1) the Court failed to give a specific unanimity instruction, which was necessary to

---

Also at oral argument on this Motion, Beal cited for the first time to *United States v. Edwards*, 235 F.3d 1173 (9th Cir. 2000).  *Edwards* is not remotely factually analogous to Beal's case, and the Court does not see how it supports Beal's position.  In *Edwards*, for two years leading up to trial, there had been no evidence connecting the defendant to an important piece of evidence—a bag of drugs.  *Id.* at 1176.  Suddenly, on the first day of trial, the prosecutor impermissibly (in violation of a local rule) took the bag of drugs out of the courtroom and "allegedly discovered a wadded-up piece of paper" that turned out to be a bail receipt with the defendant's name on it. *Id.*  Over the defendant's authenticity objection, the trial court admitted the bail receipt, and the jury convicted.  The Ninth Circuit reversed, holding that, under the "unique circumstances" of the case, the bail receipt was "inherently unreliable," and the trial court had erred in admitting it. *Id.* at 1178.  These facts bear no resemblance to the facts here.  Thus, the Court's ruling here that the drug evidence was both admissible and sufficient is not affected by *Edwards*.

ensure against juror confusion, and (2) trial counsel was constitutionally ineffective by failing to introduce evidence of the NIK field test that indicated the powder Beal possessed was cocaine and not fentanyl.  Neither argument persuades the Court that justice requires a new trial.

### a.    A specific unanimity instruction was not required.

Jury verdicts must be unanimous, *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1391 (2020), and the Court is required to instruct the jury on the requirement of unanimity.  *United States v. Gonzalez*, 786 F.3d 714, 717 (9th Cir. 2015).  A so-called "general" unanimity instruction is generally adequate, *id.*, but a specific unanimity instruction is required "if it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts."  *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983).  *See, e.g.*, *United States v. Lapier*, 796 F.3d 1090, 1097 (9th Cir. 2015) (holding a specific unanimity instruction was required where there was evidence of two separate conspiracies).

Prior to trial, Beal requested a specific unanimity instruction explaining that, to convict, the jurors must agree on which conspiracy Beal participated in.[13]  Dkt.

---

[13]The language of the requested instruction was, in relevant part:

> UNANIMITY EXPLAINED: . . . Count I of the Indictment charges Defendant with conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine, and Fentanyl.  The government is not required to prove all the illegal activities . . . that are alleged in Count 1.  Each of the jurors

No. 401-1 at 5.  Beal argued this was necessary because the evidence pointed to multiple conspiracies.[14]  The Government objected to this instruction, Dkt. No. 406 at 2–3, and the Court declined to give it because the evidence only pointed to a single conspiracy.  *See* Dkt. No. 464; 6/25/21 Trial Tr. at 26:14–25.

Now, Beal moves for a new trial based on the Court's failure to give the specific unanimity instruction.  Dkt. No. 518 at 12–13.  He again argues the evidence showed two conspiracies: "a cocaine and methamphetamine conspiracy based in Hawai'i and a separate conspiracy which germinated in Northern

---

must agree with each of the other jurors, however, that the same scheme or plan in the conspiracy was, in fact, employed by the Defendant.  The jury need not unanimously agree on each scheme or plan, but to convict, must unanimously agree upon at least one such scheme or plan as a scheme or plan that was knowingly used by the Defendant, and the jury must unanimously agree on the same such scheme or plan.  Unless the government has proven the same conspiracy to each of you, beyond a reasonable doubt, for Count 1, you must acquit Defendant of the conspiracy charge as alleged in Count 1 of the indictment. AUTHORITY: 9th Cir. Model Criminal Instruction No. 7.9 (2010) (updated 6/2018).

Dkt. No. 401-1 at 5.

[14]Relatedly, Beal also requested an instruction which said, in relevant part:

MULTIPLE CONSPIRACIES: . . .  You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were.  If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.  AUTHORITY: 9th Cir. Model Criminal Instruction No. 8.22.

Dkt. No. 455.  The Government objected to this instruction, Dkt. No. 406 at 2–3, and the Court declined to give it, *see* Dkt. No. 464, because "multiple conspiracies" instructions are not required when, as here, there is only a single defendant at trial.  *See* 6/23/21 Trial Tr. at 181:9–24; *see also United States v. Chen Chiang Liu*, 631 F.3d 993, 1000 (9th Cir. 2011).

California to transport drugs in Ohio." Dkt. No. 533 at 4. He argues the failure to give the instruction deprived him of a unanimous verdict because some jurors could have concluded he "was involved in the California to Dayton conspiracy but not the Hawai'i conspiracy," while other jurors could have concluded he "was involved in the longer Hawai'i conspiracy." Dkt. No. 518 at 12–13.

The Court continues to hold that the evidence here points to a single conspiracy. "Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterized as an independent plan or goal. The standard for determining the existence of a single conspiracy is whether there was a single overall agreement among the co-conspirators to perform various functions to carry out the objectives of the conspiracy." *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977); *see also* 6/25/21 Trial Tr. at 54:21–22 ("A conspiracy may continue for a long period of time and may include the performance of many transactions."). A "single overall agreement" may be characterized by similarity in "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." *United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980). New or different crimes are not inconsistent with a single overall agreement.

Although Beal's rendezvous with Manoa may have marked an expansion into new territory with a new drug, the elements of the conspiracy in which he

17

participated are identical. The operation was led by a single kingpin, Fonua. 6/25/21 Trial Tr. at 27:7–23. It trafficked drugs throughout Hawai'i and elsewhere using a single distribution scheme: it obtained drugs from the San Francisco Bay Area, arranged deals via telephone calls, and utilized couriers for drug delivery. The organization's expansion into Ohio occurred in the same time period as its operations in Hawai'i. Further, Beal's participation in the conspiracy consisted of a single act—the receipt of fentanyl for further transport. The evidence was not complex, and the jurors submitted no questions to the Court. In other words, there was one conspiracy, and the jury unanimously found that Beal engaged in a small part of it. There was no risk of confusion, the specific unanimity instruction was not required, and Beal's Rule 33 Motion on that basis is DENIED.

### b. Beal has not shown trial counsel was constitutionally ineffective.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This provision promises the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets out a two-prong test for what constitutes the *in*effective assistance of counsel (IAC). *First*, the defendant must prove that counsel's performance was deficient—in other words, that a particular decision fell outside the "wide range of reasonable professional assistance." *Id.* at 687–89. "There are countless ways to provide effective assistance in any given case," and

"[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.  Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction," *Strickland* thus establishes a "strong presumption" that counsel exercised reasonable judgment.  *Id.* Performance is only deficient if it could not have been the result of a sound trial strategy.  *Id.*

*Second*, if the defendant succeeds in showing deficient performance, he must then prove prejudice.  To do so, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, he must show "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation omitted).

Prior to trial, Beal's counsel successfully moved to exclude evidence of the NIK field test, which indicated the powder in Beal's possession on December 10, 2014 was cocaine.  Dkt. Nos. 390, 415, 493.[15]  Now, Beal asserts that this decision constituted IAC because it could not have been the result of a sound trial strategy. Dkt. No. 518 at 11.  He argues that the NIK evidence, combined with the eight-day break in custodial documentation in December 2014 and the fact that the powder

---

[15]Trial counsel also successfully moved to strike witness testimony that referred to the NIK test outcome.  The Government did not object.  The Court granted the motion to strike, ordered the testimony stricken, and instructed the jury not to consider the testimony for any purpose. 6/25/21 Trial Tr. at 9:22–11:14.

later tested positive for fentanyl "would have raised a reasonable doubt that the white powdery substance [in Beal's possession on December 10, 2014] was not Fentanyl and there had been a mix up during in [sic] late December and a different white powdery substance was sent to the FBI in Hawai'i." *Id.*; Dkt. No. 533 at 3. At oral argument, Beal's counsel asserted that the only reasonable strategy would have been to zero in on this NIK evidence and use it to bolster the defense argument that a mix-up in the drug evidence had occurred.  Dkt. No. 534.

Beal has not prevailed on either *Strickland* prong.[16]  *First*, Beal has not shown that trial counsel's decision to exclude the NIK test fell outside the wide range of reasonable professional assistance.  Current counsel can only argue that, in his opinion, the NIK test "would have bolstered" the defense's chain-of-custody argument.  Dkt. No. 518 at 12.  Even if true, that says little about the reasons why Beal's trial counsel might have thought it important to exclude the same evidence.  *See* Dkt. No. 390 (trial counsel's well-argued fifth motion *in limine*).  Although trial counsel did not introduce the NIK test, he did highlight the absence of advance notice regarding a fentanyl transaction.  *See, e.g.*, 6/24/21 Trial Tr. at

---

[16]The Ninth Circuit has explained that claims of IAC are best left for collateral proceedings. *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013); *see also United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000) ("Claims of [IAC] are generally inappropriate on direct appeal. Such claims normally should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted.") (citation omitted).  Nonetheless, the Court is not aware of any prohibition on considering IAC claims at the post-trial motions stage, challenging as they may be with little-to-no evidence in the record of trial counsel's actual strategy.

61:23–25 (emphasizing that the FBI expected the drugs to be cocaine).  Coupling

that fact with the chain-of-custody issue, trial counsel tried to raise doubt about the

authenticity of the drug evidence during his closing argument.  *See* Dkt. No. 501 at

75:9–11.  Perhaps he thought this was the best balance to strike, without

voluntarily introducing a field test that showed Beal was in possession of an illegal

narcotic the night he was apprehended.  Perhaps he thought it best that the jury not

associate Beal with the then much more widely known drug cocaine, as compared

to fentanyl, both of which were charged in Count 1.  Perhaps he thought it best to

focus on fentanyl to preserve his statute of limitations argument that was premised

on the late change of controlled substances allegations in the Third Superseding

Indictment (discussed *infra* at III.B.a.).  As there are "countless" reasonable trial

strategies, Beal has not overcome the "strong presumption" that his former counsel

exercised reasonable judgment.  *See Strickland*, 466 U.S. at 689.[17]

 *Second*, even if Beal had established deficient performance, he has not

established prejudice because he has not shown a "substantial" likelihood that the

---

[17]Current counsel expresses bewilderment at what he characterizes as trial counsel's decision to bring in the NIK cocaine evidence during closing argument, in spite of trial counsel's own motion to exclude that evidence.  *See* Dkt. Nos. 518 at 11; 534; 6/25/21 Trial Tr. at 75:9–11 ("Inside the bag was found packages of white powder believed to be cocaine.").  However, trial counsel never referred to the NIK test during trial.  Rather, he consistently pointed out only that no one had *expected* the drugs to be fentanyl—that the FBI thought the powder was cocaine.  *See* 6/25/21 Trial Tr. at 9:22–10:9 ("Trial Counsel: And your thought at that point was that Mr. Beal, cocaine is what he possessed at that time?  A: That's what the field test indicated at that time, yes.  Trial Counsel: Your Honor, I have a motion to make based on that statement. . . .  [At sidebar] [T]his witness describes the field test.  I never asked him about a field test.  I just asked him what he believed. . . .  I would ask that that testimony be stricken.").

NIK evidence would have altered the jury's verdict.  *See Pinholster*, 563 U.S. at 189.  A first step might have been for current counsel to argue that the NIK test was reliable, and thus that it would have been admitted at trial in accordance with *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Neither his October 1, 2021 Motion nor his November 3, 2021 Reply, however, even attempt to make such a showing.  *See* Dkt. Nos. 518, 533.  He did argue reliability during oral argument on November 23, 2021.  Dkt. No. 534.  However, this attempt was too little, as well as too late.  His tardy proof consisted of an unsupported statement that his own research shows these tests are "99% accurate."  *Id.*  With nothing more concrete in the record, counsel has not shown the NIK test would have been admitted, or that the jury would have credited it.[18]  In sum, the Court DENIES Beal's claim of IAC on the current record, without prejudice to a subsequent claim on collateral review.

---

[18]The Court's own cursory research indicates that NIK tests are not definitive.  *See, e.g., Solorio*, 669 F.3d at 948 (describing "a preliminary test that would indicate whether the substance was probably methamphetamine, but which was not definitive"); Dkt. No. 390 at 2–3 (arguing NIK test is not reliable under *Daubert*); Dkt. No. 413-1 at 4:3–16; 5:5–7 (Officer Simmons' deposition: "It's not—you still have to send it to the lab to get official results in the testing because just the chemical reaction changes the color of the test.  So it's just to determine really whether it's an illegal narcotic. . . .").  As further evidence of the unreliability of the NIK test here, the drug-sniffing dog, Katy, who circled Beal's cab on December 10, 2014, did not alert to the presence of drugs.  6/23/21 Trial Tr. at 172:2–10.  Katy was trained to detect cocaine, methamphetamine, crack, marijuana, and heroin, but not fentanyl.  *Id.*

III.   **The Rule 34 Motion is DENIED because there is no issue with the Court's jurisdiction.**

A.   **Legal Standard**

Pursuant to Fed. R. Crim. P. 34(a), "[u]pon the defendant's motion or on its own, the court must arrest judgment" post-conviction if it becomes clear that "the court does not have jurisdiction of the charged offense."

B.   **Discussion**

Beal proffers two discrete arguments for why the Court lacked jurisdiction: (1) the fentanyl charge was barred by the statute of limitations, and (2) the Court lacked venue.  Neither argument has merit.

a.   **The charge did not violate the statute of limitations.**

Beal's Rule 34 motion states, without argument, that the Court lacked jurisdiction because the Third Superseding Indictment, Dkt. No. 234, violated the statute of limitations.  Dkt. No. 518 at 14.  This is the same assertion Beal made in his Third Motion to Dismiss, Dkt. No. 413, which this Court denied on June 22, 2021.  *See* Dkt. Nos. 453, 496.[19]  Beal has offered no reason for the Court to

---

[19]That motion to dismiss argued that the addition of fentanyl to Count I materially altered the charge against Beal more than five years after Beal's alleged criminal conduct.  The Court ruled that Count I of the Third Superseding Indictment did not impermissibly broaden or amend the charge because at least two of the preceding indictments—neither of which violated the statute— put Beal on notice of the evidence against him, consistent with the requirements of *United States v. Liu*, 731 F.3d 982, 996-997 (9th Cir. 2013).  Dkt. No. 453.

reconsider its prior ruling.  Thus, his Rule 34 motion premised on this argument is DENIED.

### b.    Venue was proper.

"[T]he government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18; *see also* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ."); *id.* amend. VI ("[T]he accused shall enjoy the right to . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .").  Venue for a continuous crime, like conspiracy, lies in any district where the offense began, continued, or was completed.  *United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002); 18 U.S.C. § 3237(a).  Each co-conspirator may be tried in any district where the conspiracy occurred, even if that co-conspirator did not himself commit any act within that district.  *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994).

Beal argues the Court lacked venue here because the evidence showed two separate conspiracies, one of which—the one in which Beal participated—occurred entirely outside the District of Hawai'i and "had nothing to do with Hawai'i."  Dkt. No. 518 at 5.

Beal's Rule 29 motions at trial made the same argument.  *See* 6/25/21 Trial Tr. at 22:12–13, 23:13–22 ("The venue is inappropriate. There's no act that Mr.

Beal did that affected the State of Hawaiʻi in any . . . way or form at all.  He has not been here, he did not communicate with anybody here whatsoever, and there's no indication that . . . this fentanyl conspiracy had anything to do with any events occurring in the State of Hawaiʻi.").  At trial, the Court rejected the argument on the merits, finding sufficient evidence from which a rational juror could find venue.  *See id.* at 27:7–23.

The Court continues to hold that venue was proper because there was a single conspiracy which clearly touched the District of Hawaiʻi.[20]  As trial counsel explained to the jury in his opening statement, "[Beal i]s alleged to be part of a gigantic conspiracy spreading all the way to Hawaiʻi. . . .  to distribute drugs all across the United States, across Hawaiʻi, from Ohio to California, to here—this global, national, thousand-mile conspiracy."  6/21/21 Trial Tr., Dkt. No. 496 at 42:10–11, 42:23–43:1.  Indeed, his participation in the conspiracy was disclosed to law enforcement during the course of wiretaps originating in Hawaiʻi, involving Hawaiʻi (and, specifically, Maui) residents, and following numerous drug transactions involving co-conspirators in Hawaiʻi.  Nothing more is required to establish venue.[21]

---

[20]*See supra*, Section II.B.a. (rejecting Beal's assertion of multiple conspiracies).

[21]Beal also argues that the Court erred by not submitting the issue of venue to the jury.  Dkt. No. 518 at 16.  But the Court is only required under certain circumstances to present a venue question to the jury if the defense actually requests such an instruction.  *United States v. Moran-Garcia*, 966 F.3d 966, 969 (9th Cir. 2020) ("[I]t is error to not give a requested instruction on venue.");  *United States v. Miller*, 111 F.3d 747, 750 (10th Cir. 1997) ("[F]ailure to instruct on other

## CONCLUSION

For the reasons stated herein, Beal's motion seeking various forms of post-verdict relief, Dkt. No. 518, is DENIED.

IT IS SO ORDERED.

DATED: November 30, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

USA v. Beal; Cr No. 18-00070 DKW-KJM-12; **ORDER DENYING DEFENDANT'S MOTIONS TO (1) SET ASIDE THE GUILTY VERDICT AND ENTER AN ACQUITTAL, (2) ORDER A NEW TRIAL, AND/OR (3) ARREST JUDGMENT**

---

essential elements of the crime, even when not requested by the defendant, is structural error and *per se* reversible. . . . By contrast, the particular circumstances of a case determine whether failure to instruct on venue is plain error. . . . We have said that failure to instruct the jury on venue when requested to do so is error."). No such instruction was ever requested. *See* Dkt. Nos. 401, 405, 412, 455, 501.

Beal's Rule 34 motion states that trial counsel did request a jury instruction on venue. Dkt. No. 518 at 6. Worse, Beal's motion went so far as to say that "this Court ruled that no jury instruction on venue was appropriate because, in its view, venue was not a question of fact for the jury but instead a legal question that it had already decided by denying defense counsel's Rule 29 motion." *Id.* After the Government pointed out the falsity of these assertions, Dkt. No. 531 at 11, Beal conceded as much, without explanation. Dkt. No. 533 at 4. It seems defense counsel pulled this detailed recitation of a ruling and reasoning out of thin air. *See Moran-Garcia*, 966 F.3d at 968 (articulating such a ruling word-for-word).

In one short sentence in his Reply and again during oral argument, but not in his October 1, 2021 Motion, current counsel also vaguely argues that trial counsel was ineffective by failing to request a venue instruction (the same instruction that current counsel incorrectly insisted had been requested). *See* Dkt. Nos. 533 at 4; 518 at 6. Because this IAC-based argument was never made in the briefs, it was waived, and the Court declines to reach it. *See* LR 7.2.